# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **MICHAEL H. HERMAN,** ) | |
| ) | No. 15 C 10194 |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | Magistrate Judge Susan E. Cox |
| **NANCY A. BERRYHILL, Acting** ) | |
| **Commissioner of the U.S. Social** ) | |
| **Security Administration,**[1] ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

Plaintiff Michael Herman ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Disability Insurance Benefits ("DIB") under Title XVI of the Social Security Act. The Court grants the Plaintiff's motion for summary judgment (Dkt. 11), and denies the Commissioner's motion for summary judgment (Dkt. 19). The Court reverses the Commissioner's decision and remands the case for further proceedings consistent with this opinion.

## STATEMENT

### I.  Procedural History

Plaintiff filed a DIB application on March 22, 2012, alleging a disability onset date of January 20, 2012, due to Hashimoto's disease, hyperthyroidism, pre diabetes, obstructive sleep apnea, male hypogonadism, asthma, hypertension, hiatal hernia, gastroesophageal reflux disease, hypercholesterolemia, and an anxiety disorder. (R. 222, 226.) His initial application was denied on July 12, 2012, and again at the reconsideration stage on December 19, 2012. (R. 128, 132.)

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on January 15, 2013, and the hearing was scheduled on March 25, 2014. (R. 142, 44.) At the hearing, Plaintiff, who was represented by counsel, appeared and testified. (R. 69-81.) Vocational expert ("VE") Aimee Mowery and medical expert ("ME") James M. McKenna, M.D., also appeared and offered testimony. (R. 7-23, 82-93.) At that time, Plaintiff amended his alleged disability onset date to February 6, 2012. (R. 51.) On May 5, 2014, the ALJ issued a partially favorable written decision finding that Plaintiff was disabled as of April 18, 2014 through the date of the decision, but not prior thereto. (R. 22-38.) Plaintiff then filed a timely request for review of the ALJ's decision on June 12, 2014. (R. 17.) The Appeals Council ("AC") granted the request, and, on October 19, 2015, issued a final decision of the Commissioner, finding that Plaintiff was not disabled within the meaning of the Act for the entire period under consideration. (R. 4-7); *see* 20 C.F.R. § 404.981. Plaintiff then filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

### III. The ALJ's Decision

On May 5, 2014, the ALJ issued a written determination denying Plaintiff's DIB application. (R 22-38.) As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. (R. 24.) Applying the five-step sequential evaluation process pursuant to 20 C.F.R. § 404.1520, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of February 6, 2012. (*Id.*) At step two, the ALJ determined that Plaintiff had the severe impairments of obesity, sleep apnea, and anxiety. (*Id.*) At step three, the ALJ found that Plaintiff's impairments did not meet the severity requirements of the listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 25.) Before step four, the ALJ determined that

Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 404.1567(c). (R. 27.) The ALJ also found that Plaintiff's RFC was further limited to no climbing ladders, ropes, or scaffolds; to no exposure to work hazards such as unprotected heights and moving machinery; and to simple routine work which would preclude fast paced or moving assembly type work. (*Id.*) At step four, the ALJ concluded that Plaintiff could not perform his past relevant work as a senior consultant. (R. 36.) Finally, at step five, the ALJ found that Plaintiff would have been able to perform work that existed in the national economy from February 6, 2012 through April 18, 2014; however, beginning on April 18, 2014, when Plaintiff turned 61 years old, no jobs existed in significant numbers in the national economy that Plaintiff could perform, given his age, education, work experience and RFC. (R. 36-38.) Given these findings, the ALJ concluded that Plaintiff was disabled as defined in the Social Security Act from April 18, 2014 until the date of the ALJ's opinion on May 5, 2014. (R. 38.)

To support his RFC determination, the ALJ summarized Plaintiff's symptoms as reported by Plaintiff to various medical professionals, and also as he described them in Function Reports and at the hearing. (R. 27-34.) The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible prior to April 18, 2014." (R. 28.)

The ALJ also summarized the opinions of various doctors who examined Plaintiff or reviewed the medical record (R. 28-36). Regarding the physical RFC determination, the ALJ accorded "very substantial weight" to the opinions of the ME "since he is familiar with the disability program and has had the opportunity to review and evaluate the entire record, including both the written documentation and hearing testimony." (R. 34.) By contrast, the ALJ

3

gave "less weight" to the state agency physicians' assessments, explaining that new evidence had been received since the state agency medical consultants formulated their opinions. (R. 34.) With regards to the mental RFC determination, the ALJ accorded "[n]o great or controlling" weight to the opinion of Dianne Stevenson, Psy.D., indicating that she was a one-time examiner of Plaintiff and that the treatment records do not support the level of limitation suggested by her. (R. 35.) Similarly "no great or controlling weight" was given to the medical source statement of treating psychiatrist Ralph M. Orland, M.D., or to his letter opining that Plaintiff is unable to work in any capacity at this point. (R. 35-36.) The ALJ reasoned that the level of limitation claimed by Dr. Orland is not supported by his own treatment notes, and that the issue of disability is reserved for the Commissioner. (R. 36.) The ALJ did not articulate what weight, if any, he gave to state agency mental health consultants.

## V. The AC's Decision

On October 19, 2015, the AC issued an unfavorable decision, applying the five-step sequential evaluation process. (R. 1-8.) The AC adopted the ALJ's findings at steps one, two, three, and four of the sequential evaluation process. (R. 4-5.) At step five, the AC also adopted the ALJ's finding that Plaintiff would have been able to perform work that existed in the national economy from February 6, 2012 through April 18, 2014. (R. 5.) However, the AC rejected the VE's finding that Plaintiff would be unable to make a vocational adjustment to other work in the national economy once he changed age categories to closely approaching retirement age. (*Id.*) The AC explained, "Agency regulations indicate that an individual who is closely approaching retirement age and is limited to work at the medium exertional level should be found disabled only if that individual has a limited education and no work experience, or a marginal education and a history of unskilled work (20 C.F.R Subpart P, Appendix 2, Section 203.00(c))." (*Id.*)

4

Accordingly, the AC concluded that Plaintiff "was not disabled within the framework of Medical-Vocational Rules 203.15 and 203.07" for the entire period under consideration. (R. 5-6.)

## DISCUSSION

### I. Standard of Review

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, 20 C.F.R. §§ 404.1520(a) and 416.920(a), if it is supported by substantial evidence, and if it is free of legal error. 42 U.S.C. § 405(g). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). A "minimal[ ] articulat[ion] of her justification" is enough. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "Similar requirements necessarily apply in reviewing the [AC]'s decision." *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir. 1986).

### II. The ALJ and the AC Improperly Weighed the Treating Physician's Opinion

The "treating physician" rule requires that an ALJ give controlling weight to the medical opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence. 20 C.F.R. § 404.1527(d)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). Otherwise, the ALJ must "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Even where a treater's opinion is not given controlling weight, an ALJ

5

must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(d)(6); *Harris v. Astrue*, 646 F. Supp. 2d 979, 999 (N.D. Ill. 2009). An opinion is given controlling weight because "a treating physician has the advantage over other physicians whose reports might figure in a disability case because the treating physician has spent more time with the claimant." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

Here, the ALJ improperly discounted the opinion of Dr. Orland. It is undisputed that Dr. Orland is Plaintiff's treating psychiatrist. The ALJ himself recognized "Dr. Orland was Plaintiff's treating psychiatrist and had treated Plaintiff from February 2012 through at least January 2014." (R. 30-32, 34.) However, the reasons the ALJ gave to reject Dr. Orland's opinion were insufficient to completely deny weight to his medical opinion as a treating physician.

The ALJ accorded "no great or controlling weight" to the opinion of Dr. Orland. The ALJ reasoned that the level of limitation claimed by Dr. Orland is not supported by his own treatment notes and that the issue of disability is reserved for the Commissioner. (R. 36.) While the ultimate issue of disability is a legal decision reserved for the Commissioner, the ALJ cannot disregard the medical evidence as a whole from the treating physician. *Scrogham v. Colvin,* 765 F.3d 685, 697 (7th Cir. 2014). The ALJ must consider the entire record, including those portions

of the record that do not support the ALJ's ultimate determination. (*Id.*) Particularly in mental illness cases, it is important for the ALJ to evaluate the entire record, as mental illness often fluctuates. *Scott*, 647 F.3d at 740.

The ALJ asserted that although Dr. Orland opined that Plaintiff had marked deficiencies in concentration, persistence, or pace, his own treatment notes support a finding that these abilities were only moderately limited as the notes "often demonstrate normal memory, concentration, and abstraction." (R. 35-36). The ALJ points to no specific progress notes to support this proposition, but cites to Dr. Orland's treatment records as a whole. It is unclear to this Court, where in Dr. Orland's notes the ALJ found that Plaintiff "often" demonstrates normal memory, concentration and abstraction. Indeed, of the seven progress notes that directly address memory and concentration in formal mental status examinations, only one indicates normal memory and concentration, whereas six indicate abnormalities in memory and concentration. (R. 597-601.) The other progress notes which do not directly address memory and concentration, indicate that Plaintiff is preoccupied (R. 604, 606-608), agitated (R. 605), and cannot focus for very long. (R. 606.) Thus, the ALJ failed to demonstrate inconsistencies between Dr. Orland's treatment notes and his findings.

The ALJ further argued that Dr. Orland's treatment notes did not support his findings regarding the severity of Plaintiff's mental impairments or the resulting limitations on Plaintiff's ability to work full time. (R. 35.) The ALJ reasoned that Dr. Orland's treatment notes indicate that Plaintiff "is able to maintain a relationship with his girlfriend, has longtime friendships, and attends to daily activities." (*Id.*) The ALJ fails to articulate *how* having these relationships or attending to daily activities supports an ability to have a full-time job or contradicts Dr. Orland's findings. *See Clifford v. Apfel*, 227 F. 3d 863, 871 (7th Cir. 2000) (finding that the

7

ALJ did not provide any explanation for his belief that the claimant's activities were inconsistent with the treating physician's opinion and his failure to do so constitutes error); s*ee also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer."); *Punzio v. Astrue*, 630 F.3d 740, 712 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010) ("an ability to engage in 'activities of daily living' (with only mild limitations) need not translate into an ability to work full time."). Without such a logical bridge, the Court cannot trace the path of the ALJ's reasoning.

Further, although the ALJ is entitled to not accord Dr. Orland's opinion controlling weight, she must still address the factors listed in 20 C.F.R. § 404.1527. SSR 96-2p. SSR 92-2p states that treating source medical opinions like Dr. Orland's "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." (*Id.*) Here, the ALJ failed to minimally address many of the enumerated factors provided in 20 C.F.R. § 404.1527. Specifically, the ALJ did not discuss the nature and extent of Dr. Orland's treating relationship with Plaintiff, the frequency of examination, the supportability of the decision or the consistency of the opinion with the record as a whole. Accordingly, the ALJ impermissibly rejected Dr. Orland's opinion before engaging in the required discussion. Without the requisite "good reasons" for rejecting Dr. Orland's opinion, the ALJ committed reversible error, which requires remand.[2]

## CONCLUSION

---

[2] Because the Court remands on this issue, it need not explore in detail the other arguments posited by Plaintiff on appeal since the analysis would not change the results in this case.

For the reasons discussed herein, the Court grants the Plaintiff's motion for summary judgment (Dkt. 11), and denies the Commissioner's motion for summary judgment (Dkt. 19.) The Court reverses the Commissioner's decision and remands the case for further proceedings consistent with this opinion.

**ENTER:**

**DATED:**   3/8/2017                             _____

                                                                 Susan E. Cox
                                                                 United States Magistrate Judge